IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA        §
                                §
v.                              §        CRIMINAL NUMBER H-09-509
                                §
DARRICK LASHONTA NELLON         §

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant, Darrick Lashonta Nellon's, Motion to Suppress (Docket Entry No. 21). Defendant seeks to suppress evidence recovered from a black pouch found on the bus he was riding as a passenger on May 31, 2009. Defendant also moves to suppress any custodial statements elicited from him. On February 2, 2010, the United States filed its Opposition to Defendant's Motion to Suppress Evidence (Docket Entry No. 25). On February 4, 2010, the court conducted an evidentiary hearing at which both the United States and the defendant presented testimony and exhibits. At the conclusion of the evidence the court denied the defendant's motions. The court will now explain in greater detail the reasons for the court's earlier ruling.

## I.   Factual Background

Jean Shepard, a Metro bus driver with six years of experience; M.O. Skinner, a veteran officer of the Houston Police Department (HPD); and Juan Hernandez, a veteran investigator for the United States Public Defender's office, testified at the

February 4, 2010, suppression hearing.  The credible, and largely undisputed, testimony of these witnesses and the exhibits presented at that suppression hearing lead the court to conclude as follows:

Shepard is employed as the operator of a public bus.  On Sunday, May 31, 2009, Shepard began driving the Route 46 Gessner bus at approximately 5:45 a.m.  The last stop on Shepard's route was the intersection of Gessner Road and Kemp Forest Street located at the southwest corner of the Pine Crest Golf Club.  Shepard reached that intersection at approximately 7:15 a.m. and parked her bus on Kemp Forest Street to wait until it was time to start her second route.  While parked on Kemp Forest Street, Shepard walked through her bus to check for items that passengers may have left on the bus.  Shepard explained that all Metro drivers are trained to check their buses in this manner between each route driven.  Shepard did not find any items on her bus.  Shepard waited on Kemp Forest Street until approximately 7:35 a.m. and then began her route again.  The defendant boarded Shepard's bus at a bus stop located at the intersection of Gessner Road and Kemp Forest Street.  The defendant was sweating and carrying a black pouch the size of a shaving kit.  After paying his fare, the defendant walked towards the back of the bus and sat down on the driver's side near the back door.  Shepard continued driving the bus south on Gessner Road.  At the intersection of Gessner and Kempwood Street a black female passenger boarded the bus dressed in church clothes.  Shortly thereafter, but before Shepard's bus crossed Hammerly Road, an HPD

-2-

patrol car drove up alongside the bus and Officer Skinner, the police officer driving the patrol car, signaled Shepard to pull over.

Earlier that morning -- at approximately 7:30 a.m. -- Officer Skinner was the first of at least two HPD officers who responded to a call at the home of Jessica Scott located on Talina Way. Ms. Scott had a bruise under her eye.  Ms. Scott told Officer Skinner that her boyfriend, Darrick Nellon, had punched her in the eye the night before, and had "just" left the residence heading towards a Metro bus stop at Gessner and the golf course.[1] Ms. Scott described Mr. Nellon to Officer Skinner as a big, tall—6' or 6'1", clean-cut, black male carrying a bag.

Talina Way is a residential street that runs north-south parallel to and one block east of Gessner Road.  At its south end Talina Way curves east to join Hollow Hook Street one block north of Clay Road.  Immediately south of the intersection of Hollow Hook and Clay Road is the Pine Crest Golf Course, which stretches west to Gessner Road, east to a series of streets that dead end at the golf course, and south to Kemp Forest Street.[2]  The population of this area is mostly Hispanic.

---

[1]See also Defendant's Motion to Suppress and Request for Evidentiary Hearing, Docket Entry No. 21, p. 1 (stating that "[a]ccording to police reports, on May 31, 2009, Houston Police Department Officers responded to a call at the home of Jessica Scott.  Ms. Scott claimed that Darrick Nellon had assaulted her, and that Mr. Nellon had recently left the residence, and was headed for a Metro bus stop on Gessner Road near a golf course.").

[2]See Map, Exhibit 1 of Defendant's Exhibit for Suppression Hearing, Docket Entry No. 29.

Officer Skinner left Scott's house in his HPD patrol car to search for the defendant, Darrick Lashonta Nellon. Officer Skinner proceeded south on Talina Way and Hollow Hook to Clay Road, and then one block west on Clay Road to Gessner Road. At the intersection of Clay Road and Gessner Road, Officer Skinner entered a convenience store at a Valero gas station. He checked the restroom in search of the defendant but did not find anyone. As Officer Skinner left the Valero store a male clerk told him that approximately five minutes earlier, a black male carrying a bag had run south down Gessner. Officer Skinner proceeded south down Gessner Road where he saw a Metro bus stop at the intersection of Gessner Road and Kemp Forest Street but did not see anyone waiting for a bus. Officer Skinner continued south down Gessner Road, and a few blocks later he saw a Metro bus traveling south in the right-hand lane. Officer Skinner pulled up beside the Metro bus; and he saw a large, tall, clean-cut black male sitting in a row on the driver's side near the middle of the bus. The black male riding the bus frowned at the sight of Officer Skinner's patrol car.

Suspecting that the black male riding on the bus was the suspect for whom he was searching, Officer Skinner pulled forward and motioned with his hand to the bus driver to stop the bus. Shepard stopped the bus and opened the front door. Officer Skinner then stopped his patrol car in front of the bus, exited his patrol car, and approached the front door of the bus. Shepard, thinking that she had been stopped for a traffic violation, started to get

-4-

up from her seat to talk to the officer, but he signaled her to
remain seated.  Meanwhile, the defendant got up from his seat and
exited the front door of the bus where he met Officer Skinner.  The
defendant told Officer Skinner, "I'm the guy you're looking for."
Officer Skinner asked the defendant to identify himself.  Defendant
did so, and Officer Skinner told the defendant that he was being
detained pending an investigation.  Officer Skinner then secured
the defendant in the back of the patrol car.  The distance from
Ms. Scott's house on Talina Way to the intersection of Gessner and
Kempwood near the point at which Officer Skinner stopped Shepard's
bus is about 1.4 miles.

Once the defendant had been secured in the back of the patrol
car, Officer Skinner returned to the bus to search the area in
which the defendant had been seated for the sake of public safety.
Officer Skinner thought that since the defendant had exited the
bus, the defendant did not want him to get on the bus and go to
where he was seated.  The officer therefore decided to check to see
if the defendant had left anything on the bus.  In plain view on
the floorboard next to the seat that the defendant had occupied,
Officer Skinner found a zippered black bag.  Officer Skinner picked
up the black bag and felt a heavy object inside that seemed to be
the size and weight of a gun.  Officer opened the black bag and
found inside one Smith & Wesson .38 caliber pistol and bullets.
Officer Skinner asked Shepard if anyone other than the defendant

-5-

had been in the back of the bus, and Shepard told him that no one else had been in there.   Officer Skinner asked Shepard if she had inspected her bus before beginning her route, and Shepard told him that she had, and that the black bag had not been on her bus. Officer Skinner returned to the patrol car and asked the defendant if the black bag belonged to him.   The defendant denied ownership of the black bag.

On August 27, 2009, the defendant was indicted for possessing a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g).

## II.  <u>Standard of Review</u>

Generally, the defendant bears the burden of proving, by a preponderance of the evidence, that the evidence at issue was obtained in violation of his constitutional rights.   <u>See</u> <u>United States v. Guerrero-Barajas</u>, 240 F.3d 428, 432 (5th Cir. 2001), <u>cert. denied</u>, 122 S.Ct. 919 (2002).   However, the burden of proof shifts to the government when, as here, the search and seizure at issue were conducted without a warrant.   <u>Id.</u>

## III.  <u>Motion to Suppress Physical Evidence</u>

The defendant seeks to suppress evidence of the gun and ammunition that the police found after seizing without a warrant the bus in which he was riding as a passenger on Sunday, May 31, 2009.

-6-

**A.    Seizure of the Bus was Not Unconstitutional**

Asserting that Officer Skinner lacked specific facts to support his decision to stop the bus in which he was riding, the defendant argues that Officer Skinner lacked reasonable suspicion to effect an investigative traffic stop.  The United States argues that "[b]ecause Officer Skinner's brief detention of the bus was supported by reasonable suspicion, . . . the Defendant's motion to suppress [should] be denied."[3]

1.    Applicable Law

"The Fourth Amendment provides that '[t]he right of the people to be free in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . .'" Bond v. United States, 120 S.Ct. 1462, 1464 (2000) (quoting U.S. CONST. amend. IV).  In evaluating the constitutionality of traffic stops and whether they are justified by reasonable suspicion that a crime has been committed, courts use the standard for investigative detention announced in Terry v. Ohio, 88 S.Ct. 1868 (1968).  "An investigative vehicle stop is permissible under Terry only when 'the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" United States v. Jaquez, 421 F.3d 338, 340 (5th Cir. 2005) (quoting United States v. Sokolow, 109 S.Ct. 1581, 1585 (1989)).  "An

---

[3]United States' Opposition to Defendant's Motion to Suppress Evidence, Docket Entry No. 25, p. 1.

officer's mere hunch or unparticularized suspicion is not sufficient; rather, a minimal level of objective justification for the stop must be present." Id. at 341 (citing Sokolow, 109 S.Ct. at 1585). "The reasonableness of an investigative stop is a question of law." Id. (citing Goodson v. City of Corpus Christi, 202 F.3d 730, 737 (5th Cir. 2000)). The precise issue to be determined is whether, when viewed in the context of the totality of circumstances confronting him, including all information available at the time that he decided to stop the bus on which the defendant was riding, Officer Skinner had reasonable suspicion to do so. Id. (citing United States v. Cortez, 101 S.Ct. 690 (1981)).

  2. <u>Analysis</u>

  At the suppression hearing defense counsel argued that there was no indication from either the offense report or Officer Skinner's testimony that Officer Skinner had observed specific, objective, articulable facts that would warrant a reasonable person to believe that the black male riding the bus was the suspect for whom he was searching. The defendant's argument is based on the fact that Ms. Scott's description of the suspect was too vague to justify Officer Skinner's decision to stop the bus.

  The court concludes that Officer Skinner testified credibly and undisputedly that Ms. Scott described the suspect as a big, tall—6' or 6'1", clean-cut, black male carrying a bag. Assuming, <u>arguendo</u>, that by itself Ms. Scott's description of the man who had

-8-

assaulted her may not have provided Officer Skinner reasonable suspicion to stop the bus, see Jaquez, 421 F.3d at 340-41, the court concludes that Officer Skinner testified credibly that his decision to stop the bus was not based solely on the presence of a big, tall, clean-cut, black male passenger, but also on the following additional facts:  (1) Ms. Scott, the victim of the alleged assault, told him that the suspect had recently left her house headed for a bus stop on Gessner at the golf course; (2) a clerk at the Valero shop located at the corner of Gessner and Clay Road, which is also the northwest corner of Pine Crest Golf Course, told Officer Skinner that a black man carrying a bag had run south down Gessner approximately five minutes earlier; (3) the community at issue was mostly Hispanic; (4) when Officer Skinner proceeded south down Gessner he saw a bus stop at the corner of Gessner and Kemp Forest, which is right across the street from the southwest corner of the Pine Crest Golf Course; (5) he did not see anyone waiting at the bus stop, so he continued south down Gessner for a few blocks until he saw a Metro bus traveling south in the right-hand lane; (6) when he drove up alongside the bus he saw a big, tall, black male passenger on the bus; (7) the passenger frowned when he saw Officer Skinner and his patrol car; and (8) these events occurred early on a Sunday morning.  These additional facts distinguish this case from Jaquez and others like it where the officer conducting the investigatory stop lacks specific articulable facts tying the stopped vehicle to the reported crime.

-9-

In <u>Jaquez</u> the Fifth Circuit held that there was not reasonable suspicion to conduct a warrantless stop where an officer received a report that "a red vehicle" had been involved in a shooting.  421 F.3d at 340.  Approximately fifteen minutes after receiving the report, the officer stopped a red car traveling away from the vicinity of the shooting, an area known for its high crime rate. <u>Id.</u>  A consent search revealed that the car's driver, a convicted felon, was carrying a loaded firearm.  The Fifth Circuit reversed the district court's denial of the defendant's motion to suppress the firearm, noting that the officer had no information tying the stopped vehicle to the reported shooting other than the car's color and general location.  Such "sparse and broadly generic information," the court concluded, was insufficient to provide the officer with the reasonable suspicion necessary to justify the initial stop of the defendant's vehicle.  <u>Id.</u> at 341.

The detailed information that Ms. Scott reported to Officer Skinner about the man who had assaulted her -- including both the physical description of the suspect and that he was carrying a bag and information that the suspect was heading to a bus stop on Gessner Road at the golf course --, coupled with Officer Skinner's independent corroboration of certain aspects of Ms. Scott's information, distinguishes this case from <u>Jaquez</u>.  Unlike the description of the vehicle in <u>Jaquez</u>, which included only its color, Ms. Scott's description of the suspect included not only his race, but also his height, <u>i.e.</u>, 6' or 6'1", and his general

-10-

appearance, *i.e.*, clean-cut.  The sparse information in Jaquez also
lacked any predictive value, indicating only that a particular
color vehicle was in a certain neighborhood fifteen minutes prior
to the stop.  Here, by contrast, Ms. Scott told Officer Skinner
that the suspect was heading for a bus stop on Gessner Road at the
golf course and that he was carrying a bag, the clerk at the Valero
store told Officer Skinner that a black male carrying a bag had run
south on Gessner approximately five minutes before Officer Skinner
reached the Valero store, and when Officer Skinner found no one
waiting at the bus stop at the intersection of Gessner and Kemp
Forest -- located only about two blocks south of the Valero store
-- Officer Skinner reasonably concluded that the suspect would be
on a bus traveling south on Gessner Road in close proximity to that
bus stop.  See United States v. Torres, 534 F.3d 207, 212 (3d Cir.
2008) (tip that a car of a certain make and color would be driving
in a particular location provided reasonable suspicion to stop the
vehicle because it "accurately predicted what would follow").

Unlike Jaquez, the information that Officer Scott received
from Ms. Scott about where the suspect was heading was more than a
mere tip, it was an eyewitness account provided by a complainant
who gave her name and could be held responsible if the information
proved to be untrue.  Moreover, the information provided by
Ms. Scott about the direction in which the suspect was heading was
corroborated by the clerk at the Valero store who told Officer
Skinner that a black man carrying a bag ran south on Gessner Road

approximately five minutes before Officer Skinner arrived at the
Valero store.  Another key difference between this case and Jaquez
is the amount of time that passed between the officer's receipt of
information and the investigative stop at issue.  In Jaquez more
than fifteen minutes passed between the time the officer learned of
the shooting and he stopped the red car.  In that amount of time,
a car can take a shooter many miles away from the scene of
violence, so merely driving a red vehicle in the relative vicinity
of the shooting was held to be not enough information to create
reasonable suspicion for conducting a traffic stop.  In this case,
Ms. Scott told Officer Skinner that the suspect was traveling on
foot to a bus stop located at Gessner and the golf course, a clerk
at the Valero store told Officer Skinner that a black man carrying
a bag had run south on Gessner approximately five minutes earlier,
and after driving only a few blocks south from the bus stop at
Gessner and Kemp Forest -- the only bus stop on Gessner near a golf
course about which evidence was presented at the suppression
hearing -- Officer Skinner stopped the bus on which the defendant
was riding.

Considering the totality of the circumstances, the court
concludes that the description of the defendant and the bus stop to
which he was traveling that Ms. Scott provided to Officer Skinner,
bolstered by Officer Skinner's independent corroboration of certain
details -- such as the direction in which the black male carrying
a bag was seen running from the Valero store, the lack of waiting

passengers at the bus stop at Gessner and Kemp Forest, and the displeasure the defendant exhibited by frowning when he saw Officer Skinner's patrol car --, provided Officer Skinner with reasonable suspicion that the large, clean-cut, black male passenger on the bus was the individual who had assaulted Ms. Scott.

3.   <u>Conclusions</u>

For the reasons explained above, the court concludes that the United States carried its burden of proving by a preponderance of the evidence that Officer Skinner did not violate the defendant's Fourth Amendment right to be free from unreasonable seizure when he conducted an investigatory stop of the Metro bus on which the defendant was riding as a passenger because his suspicion that the defendant was involved in illegal activity was reasonable.   <u>Terry</u>, 88 S.Ct. at 1868.

**B.   Search of the Bus and the Black Bag was Not Unconstitutional**

The defendant argues that Officer Skinner's warrantless search of the bus and the black bag that he found on the bus was unconstitutional.   The United States argues that "Officer Skinner acted appropriately by boarding the bus and inspecting the area where he had seen Nellon,"[4] and that Nellon lacks standing "to contest Officer Skinner's recovery of the weapon."[5]   Citing

---

[4] <u>Id.</u> at 3.

[5] <u>Id.</u> at 4.

-13-

United States v. Ramos, 960 F.2d 1065 (D.C. Cir. 1992), and United States v. Johnson, No. 07-30955, 2008 WL 3876550, *4 (5th Cir. Aug. 21, 2008), cert. denied, 129 S.Ct. 945 (2009), the United States argues that Nellon abandoned the black bag when he left it behind on the bus, and citing United States v. Roman, 849 F.2d 920, 922-23 (5th Cir. 1988), the United States argues that Nellon ratified his abandonment of the black bag when he denied that it belonged to him.

1.   Applicable Law

The United States' use of the term "standing" in the context of the Fourth Amendment is really an alternative way of asserting that the defendant had no reasonable expectation of privacy in the item searched.  See Rakas v. Illinois, 99 S.Ct. 421, 430 (1978). In Bond, 120 S.Ct. at 1462, the Supreme Court recognized that a Fourth Amendment analysis of an allegedly unconstitutional search embraces two questions:  (1) whether the individual, by his conduct, has exhibited an actual expectation of privacy and (2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable.  Applying this analysis in Bond, the Supreme Court held that a Border Patrol Agent's physical manipulation of a bus passenger's soft luggage placed in the overhead storage space violated the Fourth Amendment. Id. at 1465 (citing Smith v. Maryland, 99 S.Ct. 2577, 2580 (1979)). See also Minnesota v. Carter, 119 S.Ct. 469, 472 (1998) ("[I]n

-14-

order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'").

2. <u>Analysis</u>

The United States argues that Nellon's conduct failed to exhibit an actual expectation of privacy in either the bus or the black bag because Nellon exited the bus and abandoned the black bag on the floorboard of the bus. The United States argues that Nellon ratified his decision to abandon the black bag in the public bus when he told Officer Skinner that the black bag did not belong to him. The court agrees.

The Fifth Circuit has held that a defendant who voluntarily abandons or disclaims ownership of a suitcase in a public place has no legitimate expectation of privacy in that suitcase or its contents and, therefore, cannot challenge a search of that suitcase. <u>See</u> <u>Roman</u>, 849 F.2d at 922-23. <u>See also</u> <u>Abel v.</u> <u>United States</u>, 80 S.Ct. 683, 698 (1960) (recognizing that the Fourth Amendment does not protect voluntarily abandoned property). Here, both Officer Skinner and the bus driver, Shepard, testified credibly and undisputedly that Nellon left the black bag on the bus when he got up from his seat and exited the bus after the driver stopped the bus at Officer Skinner's direction and opened the front

-15-

door.  By leaving the black bag on the floor of the bus, Nellon
abandoned all control of the black bag and its contents.  Because
the bus was a public bus, Nellon could not have reasonably expected
that the contents of the black bag would remain private.  Although
Nellon's decision to exit the bus and leave the black bag behind on
the floorboard, and his subsequent decision to deny ownership of
the black bag, were  most likely motivated by fear of being
apprehended, the court concludes that these decisions were,
nevertheless, voluntary decisions because Officer Skinner's
decision to stop the bus was based on reasonable suspicion and,
therefore, was a legal as opposed to an illegal seizure.

###    3.   Conclusions

For the reasons explained above, the court concludes that by
exiting the bus and leaving the black bag behind, Nellon, by his
conduct, exhibited no actual expectation of privacy in either the
bus or the black bag, and that any expectation of privacy that
Nellon is attempting to assert in either the bus or the black bag
that he abandoned on the floorboard is not an expectation of
privacy that society is prepared to recognize as reasonable.
Accordingly, Nellon may not suppress any evidence that resulted
from the search.

###    IV.  **Motion to Suppress Statements**

At the suppression hearing held on February 4, 2010, the
United States stated that it did not intend to introduce at trial

any custodial statement that the defendant may have made. Accordingly, the defendant's motion to suppress any custodial statements elicited from him without first being given the appropriate warnings pertaining to his Fifth and Sixth Amendment rights, is **MOOT**.

## V.  Conclusions

For the reasons explained above, the defendant's motion to suppress physical evidence in the form of the gun and ammunition found in the black bag recovered from the floorboard of the bus in which he was riding as a passenger on Sunday, May 31, 2009, is **DENIED**; and the defendant's motion to suppress any custodial statement that he may have made is **MOOT**.   Accordingly, the Defendant's Motion to Suppress (Docket Entry No. 21) is **DENIED in part and MOOT in part.**

**SIGNED** at Houston, Texas, on this 11th day of February, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-17-